UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CHRISTOPHER COLEMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case Nos. 1:05-cv-81 / 1:03-cr-231 |
| | ) | Judge Edgar |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Federal prisoner Christopher Coleman has made a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255. After reviewing the record, the Court concludes the motion is without merit and it will be denied. The record conclusively shows that Coleman is not entitled to relief under § 2255 and there is no need for an evidentiary hearing.

## I.    Standard of Review

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render

1

the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Petitioner Coleman bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

To warrant relief under § 2255 based on an alleged non-constitutional error, Coleman must show there was a fundamental defect in the criminal proceeding which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process of law. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

A § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady,* 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996); *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984).

An evidentiary hearing is unnecessary if the there are no material issues of fact in dispute or if the record conclusively shows that Coleman is not entitled to relief under § 2255. An evidentiary hearing is not required if the petitioner's allegations cannot be accepted as true because

they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Cordell v. United States*, 2008 WL 4568076, * 2 (E.D. Tenn. Oct. 14, 2008).

Coleman bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Mere vague conclusions, which are not substantiated by allegations of specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a viable claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Ryals v. United States*, 2009 WL 595984, * 5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, 2008 WL 2811902, * 1 (E.D. Tenn. July 18, 2008).

## II.    Facts and Procedural History

The underlying facts are summarized in the presentence investigation report (PSR) and in the transcript of the rearraignment hearing on January 5, 2004, when Coleman pleaded guilty to Count One of the indictment. There were no objections to the PSR and the facts are undisputed.

On February 25, 2003, detectives with the Sheriff's Department in Bradley County, Tennessee, and Drug Task Force police officers executed a search warrant at Coleman's residence at 661 Brooklawn Trail, Cleveland, Tennessee. When police officers knocked on the door, Coleman began scrambling inside the residence. As officers entered the residence, Coleman ran down the hallway into a bathroom and attempted to destroy several bags of methamphetamine. Once Coleman was taken into custody, the officers noticed a very strong chemical odor consistent with the

3

manufacture of methamphetamine. The officers called for certified methamphetamine lab detectives to come to the residence.

When the certified lab detectives arrived and searched the residence, they found a laboratory set up in the basement which had been in operation and items commonly associated with the manufacture of methamphetamine including: pseudoephedrine, crushed pseudoephedrine pills, resale notes and telephone numbers, glass jars with layered lids, Coleman fuel, coffee filters, match strikers, Red Devil lye, drain opener, gloves, tubes and hoses, hot plate, gas can, acetone, hydrogen peroxide, propane cans, and matches. They also found 1.6 grams of finished methamphetamine.

The investigating officers advised Coleman of his *Miranda* rights. Coleman knowingly, voluntarily waived his *Miranda* rights and he made the following incriminating statements and admissions. Coleman said that he had been "cooking," i.e. manufacturing methamphetamine, since July 2002. Coleman said he learned how to "cook" from other people by giving them the products or ingredients (red phosphorus) necessary to manufacture methamphetamine and they in turn taught Coleman how to "cook" methamphetamine. Coleman stated that he sold methamphetamine to help generate income to purchase the products or ingredients that he needed to manufacture methamphetamine. Coleman also mentioned that he personally had been using methamphetamine for so long that he had to use it daily just to "get by" and that he did not get "high" on methamphetamine anymore. Coleman admitted selling methamphetamine and trading items in the past, including a handgun, which he had "just gotten rid of. "

On the afternoon of September 17, 2003, a Bradley County deputy sheriff observed Coleman driving an automobile with Michael Biddy riding in the passenger's front seat. The automobile that Coleman was driving did not have a license tag which is a violation of Tennessee state law. When

the deputy stopped the automobile for not having a license tag, the deputy asked Coleman if anything in the automobile was illegal or if narcotics were present. Coleman replied "No" and gave his consent for the deputy to search the automobile. The search uncovered 10.8 grams of methamphetamine individually packaged in plastic bags for resale located in the passenger door. Also found were more empty plastic baggies indicating that the methamphetamine was being packaged for distribution. Passenger Biddy said he did not know who the methamphetamine belonged to and Coleman denied the methamphetamine was his. The deputy arrested both Coleman and Biddy.

On September 29, 2003, police officers stopped a motor vehicle that had just left Coleman's residence and approximately 3 grams of methamphetamine were found inside the vehicle. The persons in the motor vehicle admitted that they had just left Coleman's residence where they had been smoking methamphetamine. On September 30, 2003, detectives with the Bradley County Sheriff's Department executed a search warrant at Coleman's residence. Upon entering the house, the detectives found Coleman asleep on the couch. The detectives searched Coleman and found two bags of methamphetamine (total 0.3 grams) in his pants' pocket. A search of the residence yielded another bag containing 57.8 grams of methamphetamine. Items commonly associated with the manufacture of methamphetamine were found in the kitchen, garage, and backyard including: acetone, Coleman fuel, coffee filters, hot plate, pseudoephedrine, ephedrine, Heet, scanner, ice crusher used to crush pseudoephedrine pills, gloves, and digital scales.

On October 2, 2003, Bradley County sheriff's deputies responded to a burglary call at Coleman's residence. In plain view, the officers found numerous rounds of ammunition for firearms including Federal brand 12 gauge shotgun shells and other types of ammunition.

The police seized a total of 70.5 grams of methamphetamine in connection with these incidents involving Coleman. The following quantities of methamphetamine were tested and confirmed by the Tennessee Bureau of Investigation Crime Laboratory: 1.6 grams from February 25, 2003; 10.8 grams from September 17, 2003; and 58.1 grams from September 30, 2003.

On October 28, 2003, a federal grand jury in Chattanooga, Tennessee, returned an eight-count indictment against Coleman. Count One charged that on February 25, 2003, Coleman attempted to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841. Count Two charged that on February 25, 2003, Coleman violated 21 U.S.C. § 843(a)(6) by possessing equipment, chemicals, products, and materials which may be used to manufacture methamphetamine knowing, intending, and having reasonable cause to believe that they would be used to manufacture methamphetamine. Count Three charged that on February 25, 2003, Coleman possessed with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Count Four charged that on September 17, 2003, Coleman possessed with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count Five charged that on September 30, 2003, Coleman possessed with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count Six charged that on September 30, 2003, Coleman attempted to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Seven charged that on September 30, 2003, Coleman violated 21 U.S.C. § 843(a)(6) by possessing equipment, chemicals, products, and materials which may be used to manufacture methamphetamine knowing, intending, and having reasonable cause to believe that they would be used to manufacture methamphetamine. Count Eight charged that on October 2, 2003, Coleman, having been convicted in a court of a felony, did knowingly possess in and affecting commerce ammunition, that is Federal

brand shotgun shells, which had previously been transported in interstate commerce, in violation of 18 U.S.C. § 922(g).

Federal Defender LaFonda Jones was appointed to represent Coleman. Faced with overwhelming incriminating evidence, Coleman decided to plead guilty to Count One of the indictment. Coleman did not have a written plea agreement. In exchange for the guilty plea, the United States Attorney orally agreed to the dismissal of Counts Two - Eight.

On January 5, 2004, Coleman appeared in person before the Court for rearraignment. The transcript of the January 5, 2004, hearing shows that Coleman was fully advised of his legal rights and the Court complied with Fed. R. Crim. P. 11. Coleman entered a knowing, voluntary plea of guilty to Count One. The United States Attorney and the Court told Coleman that he could be sentenced up to 20 years imprisonment. Coleman acknowledged that he understood this and he still wished to plead guilty. When the Court asked Coleman if he had any prior felony convictions, Coleman replied that he had prior felony convictions. In response to a question from the Court, Coleman said that he had discussed the United States Sentencing Guidelines with Ms. Jones and how the guidelines might apply in his case. The Court explained to Coleman that the next step was for the Probation Office to prepare a PSR but the Court would not determine the guideline range and the final sentence until he returned for the sentencing hearing. Coleman said he understood.

The PSR provided that Coleman was accountable for a total of 70.5 grams of methamphetamine which resulted in a base guideline offense level of 26. In the PSR, two levels were added pursuant to U.S.S.G. § 2D1.1(b)(1) based upon Coleman's possession of a firearm. Coleman admitted to police officers on February 25, 2003, that he had traded a handgun for methamphetamine or ingredients to manufacture methamphetamine. A three-level downward

7

adjustment was recommended for acceptance of responsibility all of which preliminarily resulted in an adjusted offense level of 25.

However, the 70.5 grams of methamphetamine and the possession of the firearm ultimately played no part in determining Coleman's applicable guideline range. This is because Coleman had four prior felony convictions for crimes of violence. The PSR set forth in detail Coleman's criminal history and prior convictions which resulted in a criminal history category 6. The PSR clearly stated that Coleman had four prior felony convictions that were predicate offenses for career offender status under U.S.S.G. § 4B1.1. Coleman was correctly classified as a career offender under U.S.S.G. § 4B1.1 with an offense level of 32. A three-level downward adjustment for acceptance of responsibility resulted in a total offense level of 29 with a guideline range of 151-188 months imprisonment.

Coleman reviewed the PSR with counsel and he had no objections to the PSR. Coleman waived any objections to the PSR's accuracy. Coleman did not raise any objection concerning the accuracy of his criminal history and prior convictions set forth in the PSR. Coleman never challenged the validity of his prior felony convictions and he did not contest or object to the PSR classifying him as a career offender under U.S.S.G. § 4B1.1.

At the sentencing hearing on April 5, 2004, Coleman appeared in person and he was represented by Assistant Federal Defender Rita LaLumia. Assistant Federal Defender LaFonda Jones was ill and on sick leave on April 5, 2004, so Rita LaLumia took Ms. Jones' place and represented Coleman at sentencing.

The transcript of the April 5, 2004, sentencing hearing shows that the following occurred. Ms. LaLumia said she had reviewed the PSR with Coleman. Coleman stated that he had reviewed

the PSR and there were no corrections or additions that needed to be made to the PSR. Coleman admitted the PSR was accurate. Coleman and his counsel indicated to the that Coleman understood he was being sentenced as a career offender under U.S.S.G. § 4B1.1. Before pronouncing sentence, the Court noted Coleman's extensive criminal history involving violent conduct. On April 5, 2004, the Court sentenced Coleman to 170 months imprisonment on Count One, which was in the middle of the applicable guideline range, plus three years of supervised release. The Court advised Coleman of his right to appeal and that any notice of appeal would have to be filed within ten days. The judgment of conviction was entered on April 9, 2004.

As far as this Court can determine from the record, there were no viable, nonfrivolous grounds for Coleman to take a direct appeal from the judgment of conviction and sentence. A direct appeal was not timely filed by Coleman. On September 15, 2004, Coleman filed a late *pro se* notice of appeal. The Sixth Circuit Court of Appeals determined that the notice of appeal was untimely and it dismissed the appeal for lack of jurisdiction.

Coleman now alleges in his 28 U.S.C. § 2255 motion that he requested counsel LaFonda Jones to file a direct appeal but she failed to do so. In her affidavit, Ms. Jones flatly denies that Coleman ever requested that she file a notice of appeal.

III.    **Claims in 28 U.S.C. § 2255 Motion**

Coleman makes the following claims in his § 2255 motion. Coleman claims he was deprived of his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution in three instances: (1) counsel failed to make unspecified "appropriate motions;" (2) counsel did not timely file a notice of direct appeal as requested by Coleman; and (3) counsel did not consult with Coleman regarding a direct appeal.

9

Coleman next claims his conviction was obtained by a guilty plea that was unlawfully induced because he did not understand the consequences of his guilty plea.

Coleman further claims he was deprived of his right to due process of law under the Fifth Amendment and his right to a jury trial under the Sixth Amendment to the United States Constitution when the Court enhanced the sentence of imprisonment on Count One based on conduct to which Coleman did not plead guilty and was not proved beyond a reasonable doubt at a jury trial. In short, Coleman argues he is entitled to post-conviction relief pursuant to 28 U.S.C. § 2255 based on a retroactive application of *United States v. Booker*, 543 U.S. 220 (2005). Coleman complains that his guideline range on Count One should not have been calculated based on the total of 70.5 grams of methamphetamine, his possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), and his classification as a career offender under U.S.S.G. § 4B1.1.

## IV. <u>Analysis</u>

The Court finds that Coleman has not met this burden of showing that he is entitled to relief under 28 U.S.C. § 2255 on any of his claims. Coleman has not established an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. He has not presented sufficient, credible facts showing that his Sixth Amendment right to effective assistance of counsel was violated. Coleman also has not established there was a fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of his constitutional right to due process of law.

### A. *Strickland* <u>Test for Ineffective Assistance of Counsel Claims</u>

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have to right to assistance of counsel for his defense. Ineffective

10

assistance of counsel in violation of the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000); *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

*Strickland* established a two-part test for deciding Sixth Amendment claims of ineffective assistance of counsel. First, Coleman must establish that his counsel's performance was deficient. Second, Coleman is required to demonstrate that his counsel's deficient performance prejudiced his defense by depriving him of a fair proceeding. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Skaggs*, 235 F.3d at 267.

The first prong of the *Strickland* test requires Coleman to show that his attorney's representation was deficient, i.e. fell below an objective standard of reasonableness. Coleman must show that his counsel made such serious errors that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline,* 319 F.3d at 819; *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995).

The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that

11

counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84; *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

The second prong of the *Strickland* test requires Coleman to show that his attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of defense counsel was so manifestly deficient and ineffective that defeat was snatched from the hands of probable victory. *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Coleman must show there is a reasonable probability that, but for the errors and deficient performance of his attorney, the result of the criminal proceeding would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 270-71; *Carter*, 218 F.3d at 591; *Arredondo*, 178 F.3d at 782; *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

12

Coleman was convicted and sentenced based on his guilty plea. A knowing and voluntary guilty plea made by a defendant who has been advised by competent counsel may not be collaterally attacked. *United States v. Broce*, 488 U.S. 563, 574 (1989), citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A defendant may show that his guilty plea was not a voluntary and intelligent act because his attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Ray v. Rose*, 491 F.2d 285, 289-90 (6th Cir. 1974); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974).

Where a Sixth Amendment ineffective assistance of counsel claim is made in a § 2255 proceeding in the context of a guilty plea, the prejudice prong of the *Strickland* test is adjusted. Coleman is required to show there is a reasonable probability that, but for his counsel's errors and deficient performance, he would not have pleaded guilty to Count One of the indictment, and he would have insisted on going to trial on all eight counts in the indictment. *Hill*, 474 U.S. at 58-59; *Humphress*, 398 F.3d at 858-59; *Griffin*, 330 F.3d at 736-37; *Miller v. Straub*, 299 F.3d 570, 578 (6th Cir. 2002); *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998); S*ullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993); *United States v. Lujan*, 2006 WL 2706790, ** 5-10 (E.D. Tenn. Sept. 15, 2006); *Mayes v. United States*, 93 F. Supp.2d 882, 890 (E.D. Tenn. 2000). In discussing this standard of prejudice, the Supreme Court in *Hill* emphasized the important fundamental interest in the finality of guilty pleas. *Hill*, 474 U.S. at 58; *see also Mayes*, 93 F. Supp.2d at 890.

Coleman does not allege or claim that he is actually innocent of the criminal offense charged in Count One. Coleman does not contend there is a reasonable probability that, but for his counsel's alleged errors and deficient performance, he would not have pleaded guilty to Count One, and he

13

would have insisted on going to trial on all eight counts in the indictment. Instead, Coleman focuses his attention primarily on the sentencing phase of his case.

### B. Claim of Counsel's Failure to Make Appropriate Motions

Coleman makes a vague, concusory claim that his counsel was ineffective for failing to make "appropriate motions." Coleman does not specify and explain what motions he contends should have been filed and how such motions would have made a difference or achieved a more favorable result in his criminal case. Coleman has not met his burden of articulating sufficient facts to state a viable claim for relief under § 2255. This claim must be dismissed because it only consists of a mere vague, conclusory statement without any substantiating allegations of specific facts. It simply fails to state a viable claim cognizable under § 2255. *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735; *Ryals*, 2009 WL 595984, at * 5; *Stamper*, 2008 WL 2811902, at * 1.

Liberally construing this *pro se* claim, the Court infers Coleman is probably contending that his counsel was ineffective for not raising certain objections to the PSR at the sentencing hearing. To completely dispose of this claim, the Court assumes *arguendo* that Coleman contends his counsel was ineffective for not making objections to the PSR and the guideline range being calculated based on the 70.5 grams of methamphetamine, possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), and his classification as a career offender under U.S.S.G. § 4B1.1.

Generally, sentencing challenges cannot be raised for the first time in a § 2255 proceeding. *Weinberger*, 268 F.3d at 351; *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996). Sentencing challenges ordinarily must be raised on direct appeal or they are waived. *Weinberger*, 268 F.3d at 351. However, sentencing challenges that cannot be otherwise reviewed for the first time in a § 2255 proceeding can be reviewed as part of a successful Sixth Amendment ineffective

assistance of counsel claim. *Id*.

The Court concludes that any such claim by Coleman fails to satisfy both prongs of the *Strickland* test. Coleman cannot show that the performance of his counsel was deficient and fell below an objective standard of reasonableness. Coleman also cannot show that his attorney's performance caused him to suffer actual prejudice. Counsel's performance at Coleman's sentencing hearing was objectively reasonable under the circumstances and did not render the result of the criminal proceeding unreliable or fundamentally unfair. There is no prejudice under the second prong of the *Strickland* test because Coleman cannot show there is a reasonable probability that, but for the alleged errors of his attorney, the result of the criminal proceeding would have been different and more favorable to him.

If Coleman's counsel had raised such objections to the PSR at the sentencing hearing, the objections would have been without merit and denied. At the sentencing hearing on April 5, 2004, Coleman stated that he had reviewed the PSR and there were no corrections or additions that needed to be made to the PSR. Coleman said the PSR was accurate. Coleman had the opportunity but did not challenge the accuracy of his criminal history and the validity of his prior felony convictions set forth in the PSR. Consequently, Coleman and his counsel were not in a position to make a successful objection to Coleman being sentenced as a career offender under U.S.S.G. § 4B1.1.

Furthermore, as discussed *supra*, it is irrelevant that the PSR's preliminary computations provided Coleman was accountable for a total of 70.5 grams of methamphetamine for a base guideline offense level of 26, and two levels could be added pursuant to U.S.S.G. § 2D1.1(b)(1) based upon possession of a firearm. These enhancements ultimately played no part in determining Coleman's applicable guideline range. Coleman had four prior felony convictions for crimes of

violence that were predicate offenses for classifying him as a career offender under U.S.S.G. § 4B1.1 with an offense level of 32. A three-level downward adjustment for acceptance of responsibility resulted in a total offense level of 29 with a guideline range of 151-188 months imprisonment. Any objections to the PSR regarding the 70.5 grams of methamphetamine and two level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm were immaterial because Coleman was sentenced as a career offender under U.S.S.G. § 4B1.1.

### C. Direct Appeal Not Filed

Coleman alleges that on or about April 6, 2004, one day after the sentencing hearing on April 5, 2004, he requested counsel LaFonda Jones to file a notice of appeal. Coleman does not proffer any facts to support this bare allegation. He does not state whether the request was made orally or in writing. Coleman does not explain how he was able to communicate with counsel Jones on a date when they were not together in court. Coleman also alleges that counsel was ineffective for not consulting with him about taking a direct appeal concerning the enhancement of his sentence as a career offender under U.S.S.G. § 4B1.1.

Respondent submits a sworn affidavit from LaFonda Jones who states the following. Jones was ill and off work on April 5, 2004, when the Court held the sentencing hearing in Coleman's case. Federal Defender Rita LaLumia represented Coleman at the sentencing on April 5, 2004. When Jones returned to her office the next day on April 6, 2004, LaLumia said there were no problems with the sentencing hearing. There is nothing in the Federal Defender's office file on the Coleman case indicating that Coleman wanted to take a direct appeal. Jones never discussed an appeal with Coleman. When Jones reviewed the PSR with Coleman prior to sentencing, Coleman did not have any issues or objections to the PSR to raise with the Court. As far as Jones was

concerned, there were no issues for an appeal. Jones did not file an appeal on behalf of Coleman because he never requested it.

Coleman had an opportunity to respond to Jones' affidavit. Coleman has not responded and he has not raised any objection to the accuracy of Jones' affidavit.

Based on the facts and circumstances in the underlying criminal proceeding, including the events that occurred during the sentencing phase, the Court finds the affidavit of attorney LaFonda Jones to be completely credible, true, and accurate. Jones' affidavit is much more credible than Coleman's bare, self-serving statement. *Cf. Garner v. United States*, 2006 WL 2585066, * 9 (E.D. Tenn. Sept. 5, 2006); *Houston v. United States*, 2006 WL 13213, ** 2-3 (E.D. Tenn. Jan. 3, 2006). The Court finds that at no time did Coleman ever request or instruct either LaFonda Jones or Rita LaLumia to file a notice of direct appeal for him. One reason the Court finds Jones' affidavit to be credible is because, as far as the Court can determine from the record, there were no viable, nonfrivolous grounds for Coleman to take a direct appeal.

If a criminal defendant actually requests or specifically instructs his counsel to file a direct appeal and if counsel thereafter fails to file the appeal, it constitutes ineffective assistance of counsel and is a *per se* violation of the Sixth Amendment right to counsel, regardless of whether the appeal would have been successful or futile. With regard to the failure of defense counsel to comply with a defendant's specific request or instruction to file a direct appeal, the likelihood of success on the appeal is not a factor in determining whether a defendant has received ineffective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Carrion v. United States*, 107 Fed. Appx. 545, 546-47 (6th Cir. 2004); *Cummings v. United States*, 84 Fed. Appx. 603, 605 (6th Cir. 2003); *Johnson v. United States*, 181 F.3d 101 (Table, text in 1999 WL 357831, * 2 (6th Cir. May 24,

17

1999); *Gardner v. United States*, 178 F.3d 1294 (Table, text in 1999 WL 232693, * 3 (6th Cir. April 15, 1999); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *Garner*, 2006 WL 2585066, * 9 (E.D. Tenn. Sept. 5, 2006); *Lowdermilk v. United States*, 2005 WL 3560640, ** 4-5 (E.D. Tenn. Dec. 28, 2005).

This does not afford any relief to Coleman here. The Court finds that at no time did Coleman ever request or instruct counsel Jones to file a notice of direct appeal for him. In making this determination, the Court relies on the affidavit of Jones and the reasonable inferences that can be drawn from the criminal proceedings in Coleman's case. In 28 U.S.C. § 2255 proceedings, the Court may rely on and give credit to defense counsel's affidavit that a defendant did not request or instruct counsel to file a direct appeal. *Cummings*, 84 Fed. Appx. at 605; *Cross v. United States*, 73 Fed. Appx. 864, 865 (6th Cir. 2003); *Odom v. United States*, 229 F.3d 1153 (Table, text in 2000 WL 1175598, * 3 (6th Cir. 2000)); *Munoz v. United States*, 2008 WL 2339456, * 3 (W.D. Mich. June 4, 2008); *United States v. Walls,* 2008 WL 927926, ** 11-12 (E.D. Ky. April 4, 2008); *Schnepp v. United States*, 2007 WL 2984198, * 2 (W.D. Mich. Oct. 12, 2007); *Garner*, 2006 WL 2585066, ** 9-10; *Houston*, 2006 WL 13213, at ** 2-3; *Robinson v. United States*, 2005 WL 2417045, ** 3-4 (E.D. Tenn. Sept. 30, 2005).

An evidentiary hearing is not required because Coleman's bare, self-serving allegation is contradicted by the record and not credible. *Amr*, 280 Fed. Appx. at 485; *Valentine*, 488 F.3d 325; *Arredondo*, 178 F.3d at 782; *Cordell*, 2008 WL 4568076, at * 2. Coleman has not met his burden of articulating sufficient specific facts with some probability of verity that warrant an evidentiary hearing.

### D. Counsel Did Not Consult About Appeal

18

Coleman claims his counsel was ineffective by not consulting with him about an appeal. This ineffective assistance of counsel claim is without merit. Coleman fails to satisfy either prong of the *Strickland* test. The Court finds that the performance of counsel LaFonda Jones was objectively reasonable under the circumstances and her conduct did not cause Coleman to suffer actual prejudice.

In *Roe v. Flores-Ortega*, 528 U.S. 470, the Supreme Court rejected a *per se* rule that a convicted defendant's attorney is always required to file an appeal. Where counsel did not consult with Coleman about filing a notice of appeal, he is required to demonstrate that this omission was constitutionally deficient under the particular facts and circumstances in his case. In those cases where a defendant has not instructed his counsel one way or the other about an appeal, counsel has a constitutionally imposed duty to consult with the defendant about a direct appeal only if there is reason to think either: (1) that a rational defendant would want to appeal, for example, because there are nonfrivolous grounds for appeal; or (2) that this particular defendant reasonably demonstrated to counsel that the defendant was interested in appealing. *Id*. at 480; *Richards v. United States*, 301 Fed. Appx. 454, 457 (6th Cir. 2008); *Stamper v. United States*, 258 Fed. Appx. 795, 797 (6th Cir. 2007); *United States v. Lovell*, 83 Fed. Appx. 754, 758-60 (6th Cir. 2003).

To prove that an attorney's failure to consult about an appeal caused prejudice, a defendant must show there is a reasonable probability that, but for the attorney's deficient failure to consult, the defendant would have timely filed an appeal. *Roe*, 528 U.S. at 484; *Richards*, 301 Fed. Appx. at 459; *Stamper*, 258 Fed. Appx. at 797.

A review of the record establishes that a duty to consult with Coleman about taking a direct appeal did not arise in this case. There were no nonfrivolous grounds for appeal, and counsel Jones

did not have reason to think or believe that a rational defendant would want to appeal in Coleman's case. Coleman's guilty plea reduced the scope of potentially appealable issues. *Roe*, 528 U.S. at 480; *Richards*, 301 Fed. Appx. at 457. The sentence of imprisonment imposed on Coleman as a career offender under U.S.S.G. § 4B1.1 was within the applicable guideline range. *Cf. Richards*, 301 Fed. Appx. at 457.

Moreover, it was not clear to counsel Jones that Coleman reasonably demonstrated he was interested in appealing his sentence as a career offender under U.S.S.G. § 4B1.1. An attorney may reasonably believe that a defendant who pleads guilty seeks an end to the judicial proceedings and does not want to appeal. *Roe*, 528 U.S. at 480; *Richards*, 301 Fed. Appx. at 458. At the sentencing hearing the Court advised Coleman of his right to appeal but Coleman did not request or instruct counsel Jones to file a notice of appeal. Taking into consideration all of the information that counsel Jones knew or should have known a the time when Coleman was sentenced and the judgment of conviction entered, Coleman has not shown that counsel Jones should have known that he wanted to appeal. It was objectively reasonable for counsel Jones to not consult with Coleman about a direct appeal. *Richards*, 301 Fed. Appx. at 458.

In addition, Coleman cannot prevail on an argument that the alleged failure of counsel Jones to consult with him about a direct appeal constitutes ineffective assistance of counsel and caused him to suffer prejudice on the theory that, if an appeal had been filed, then Coleman may have been able to benefit from *Booker*, 543 U.S. 220. Coleman cannot make out a viable ineffective assistance of counsel claim by contending that attorney Jones in April 2004, should have anticipated and predicted the Supreme Court's future decision in *Booker.*

This Court sentenced Coleman on April 5, 2004, and the judgment of conviction was entered

on April 9, 2004. The Supreme Court of the United States rendered its opinion in *Booker* on January 12, 2005. It was not ineffective assistance of counsel for attorney Jones in April 2004 to not anticipate and predict the Supreme Court's future opinion in *Booker*. The Sixth Circuit and this District Court in the Eastern District of Tennessee have rejected similar ineffective assistance of counsel claims based on *Booker*. An attorney's failure to anticipate and predict *Booker* is not objectively unreasonable under the first prong of the *Strickland* test. *United States v. Burgess*, 2005 WL 1515327, ** 7-9 (6th Cir. June 22, 2005); *United States v. Cordell*, 2008 WL 4568076, * 10 (E.D. Tenn. Oct. 14, 2008); *Crisp v. United States*, 2006 WL 2548322, ** 10-11 (E.D. Tenn. Aug. 30, 2006); *Bolt v. United States*, 2006 WL 849854, ** 5-6 (E.D. Tenn. March 31, 2006); *Sloan v. United States*, 2006 WL 686875, ** 4-5 (E.D. Tenn. March 16, 2006); *Farmer v. United States*, 2005 WL 2811885, ** 4-6 (E.D. Tenn. Oct. 26, 2005); *United States v. Call*, 2005 WL 1840258, ** 4-7 (E.D. Tenn. Aug. 2, 2005).

### E. Claim Guilty Plea Unlawfully Induced

Coleman makes a vague, conclusory claim that his conviction on Count One was obtained by a guilty plea that was "unlawfully induced." Coleman contends he did not understand the consequences of his guilty plea but he fails to clarify and explain what he means by this allegation.

This claim fails. Coleman has not met his burden of articulating sufficient facts to state a viable claim for relief under § 2255. Coleman does not explain the factual basis for this particular claim. This claim must be dismissed because it consists only of a vague, conclusory statement without any substantiating allegations of specific facts. *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735; *Ryals*, 2009 WL 595984, at * 5; *Stamper*, 2008 WL 2811902, at * 1.

The Courts infers Coleman is probably complaining that after pleading guilty on Count One

he was sentenced as a career offender under U.S.S.G. § 4B1.1. The record conclusively shows that Coleman's claim challenging the validity of his guilty plea is without merit.

On January 5, 2004, Coleman appeared in person before the Court for rearraignment. The transcript of the January 5, 2004, hearing shows that Coleman was fully advised of his legal rights and the Court complied with Fed. R. Crim. P. 11. Coleman entered a knowing, voluntary plea of guilty to Count One. The United States Attorney and the Court explicitly notified Coleman that he could be sentenced up to a maximum of 20 years imprisonment. Coleman acknowledged that he understood this and he still wished to plead guilty. Consequently, it should come as no surprise to Coleman that he was ultimately sentenced to 170 months imprisonment which is substantially less than 20 years (240 months).

When the Court asked Coleman if he had any prior felony convictions, Coleman replied that he had prior felony convictions. Coleman said that he had discussed the Sentencing Guidelines with his counsel, Ms. Jones, and how the guidelines might apply in his case. The Court was under no obligation to advise Coleman of his criminal history and that he could be sentenced as a career offender under U.S.S.G. § 4B1.1 before allowing Coleman to change his plea to guilty on Count One. *United States v. Sanders*, 207 Fed. Appx. 602, 613 (6th Cir. 2006).

The Court explained to Coleman that the next step was for the Probation Office to prepare a PSR but the Court would not determine the guideline range and the final terms of the sentence until he returned for the sentencing hearing. Coleman said he understood. Although Coleman may not have fully realized or understood on January 5, 2004, that he could be sentenced as a career offender under U.S.S.G. § 4B1.1 and did not know his term of imprisonment would be 170 months, this does not mean his guilty plea was unlawfully induced and is invalid. He was notified at the

22

Rule 11 guilty plea hearing that he could be sentenced up to a maximum of 20 years imprisonment. He admitted under oath that he was guilty as charged on Count One. In exchange for his guilty plea, Coleman was able to get a reduction in his sentence based on acceptance of responsibility and get Counts Two - Eight of the indictment dismissed. The Court finds that Coleman's guilty plea was knowing and voluntary, and he has not come forward with any credible facts and proof to the contrary. Coleman was not improperly induced or tricked into pleading guilty.

### F. *Booker* Claim: Enhanced Sentence Career Criminal Under U.S.S.G. § 4B1.1.

Coleman claims he was deprived of his Fifth Amendment right to due process and his Sixth Amendment right to a jury trial when the Court enhanced or increased the sentence of imprisonment based on conduct to which Coleman did not did not admit or plead guilty, and was not proved beyond a reasonable doubt at a jury trial. Coleman says he only pleaded guilty to Count One. Coleman complains that his guideline range should not have been calculated and enhanced based on 70.5 grams of methamphetamine, possession of a firearm under U.S.S.G. § 2D1.1(b)(1), and his classification as a career offender under U.S.S.G. § 4B1.1. Coleman argues he is entitled to relief pursuant to 28 U.S.C. § 2255 based on a retroactive application of *Booker*, 543 U.S. 220.

In *Booker*, the Supreme Court held that its decision in *Blakely v. Washington*, 542 U.S. 296, applies to the United States Sentencing Guidelines. The *Booker* Court also reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244.

Coleman's *Booker* claim is frivolous and fails for the following reasons. First, to the extent

that Coleman asserts a *Booker* claim with regard to the alleged enhancement of his sentence based on the 70.5 grams of methamphetamine and possession of a firearm under U.S.S.G. § 2D1.1(b)(1), his claim is factually incorrect. Coleman's sentence of imprisonment was not enhanced or increased based on the 70.5 grams of methamphetamine and possession of a firearm under U.S.S.G. § 2D1.1(b)(1). As discussed *supra*, it is immaterial that the PSR stated Coleman was accountable for a total of 70.5 grams of methamphetamine for a base guideline offense level of 26 and two levels could be added pursuant to U.S.S.G. § 2D1.1(b)(1) based on possession of a firearm. These two factors ultimately played no part in determining Coleman's applicable guideline range because he was sentenced as a career offender under U.S.S.G. § 4B1.1. It was undisputed that Coleman had four prior felony convictions for crimes of violence that were predicate offenses for classifying him as a career offender under U.S.S.G. § 4B1.1 with an offense level of 32. A three-level downward adjustment for acceptance of responsibility resulted in a total offense level of 29 with a guideline range of 151-188 months imprisonment. The PSR's computations were correct.

Second, *Booker* cannot be applied retroactively in this 28 U.S.C. § 2255 proceeding. This Court sentenced Coleman on April 5, 2004, and the final judgment of conviction was entered on April 9, 2004. The Supreme Court subsequently rendered its decision in *Booker*, 543 U.S. 220, on January 12, 2005. When *Booker* was decided, Coleman's case was not then pending on direct review in any federal court. *Booker* cannot provide relief to Coleman because *Booker* does not apply retroactively to cases on collateral review under 28 U.S.C. § 2255. *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005); *accord, Taniguchi v. United States*, 262 Fed. Appx. 714 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, 328-31 (6th Cir. 2007); *Hicks v. United States*, 258 Fed. Appx. 850, 854 (6th Cir. 2007); *United States v. Saikaly*, 424 F.3d 514, 517

(6th Cir. 2005); *Cordell v. United States*, 2008 WL 4568076, * 11 (E.D. Tenn. Oct. 14, 2008); *Tribble v. United States*, 2008 WL 1859880, * 11 (E.D. Tenn. April 23, 2008); *Talley v. United States*, 2006 WL 3422997, ** 23-24 (E.D. Tenn. Nov. 27, 2006); *Tramble v. United States*, 2005 WL 1421618 2997 (E.D. Tenn. June 15, 2005).

Third, even if we assume for the sake of discussion that *Booker* could somehow be applied retroactively to Coleman's case under 28 U.S.C. § 2255 (which it cannot), this still would not afford any § 2255 post-conviction relief to Coleman based on his being sentenced as a career offender under U.S.S.G. § 4B1.1. In the wake of *Apprendi*, *Blakely*, and *Booker*, a judge during the sentencing phase of a criminal case is permitted to find the fact of a prior conviction based on the preponderance of the evidence. In *Apprendi* and *Booker*, the Supreme Court excepted "the fact of a prior conviction" from its general rule that sentence enhancing facts not admitted by a defendant must be found by a jury and proved beyond a reasonable doubt. *Booker*, 543 U.S. at 244; *Apprendi*, 530 U.S. at 490; *United States v. Martin*, 526 F.3d 926, 941 (6th Cir. 2008).

Based on this distinction between prior convictions and other sentence-enhancing factors, the Sixth Circuit has held that a District Court does not violate *Booker* and the Sixth Amendment right to jury trial by determining the fact and nature of a defendant's prior convictions based on the preponderance of the evidence, and then using those findings to impose an enhanced or increased sentence. *Booker* does not confer the right to have career-offender sentencing determinations and the fact of prior felony convictions submitted to a jury under the Sixth Amendment. *Martin*, 526 F.3d at 941-42; *United States v. Gaines*, 227 Fed. Appx. 487, 491 (6th Cir. 2007); *United States v. Ortkiese*, 208 Fed. Appx. 436, 442 (6th Cir. 2006); *Sanders*, 207 Fed. Appx. at 613; *United States v. Watford*, 468 F.3d 891, 915 (6th Cir. 2006); *United States v. Caswell*, 456 F.3d 562, 658-59 (6th

Cir. 2006); *United States v. Mahon*, 444 F.3d 530, 535-36 (6th Cir. 2006); *United States v. Beasley*, 442 F.3d 386, 391 (6th Cir. 2006); *United States v. Hill*, 440 F.3d F.3d 292, 298-99 (6th Cir. 2006); *United States v. Caraway*, 189 Fed. Appx. 460, 464-65 (6th Cir. 2006); *United States v. Bradley*, 400 F.3d 459, 462-63 (6th Cir. 2005); *United States v. McKinney*, 187 Fed. Appx. 563 (6th Cir. 2006); *United States v. Poole*, 407 F.3d 767, 777 (6th Cir. 2005); *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005).

Fourth, there is no *Booker* problem with regard to at the accuracy of Coleman's criminal history and the validity of his prior felony convictions because during the sentencing hearing on April 5, 2004, Coleman stated that he had reviewed the PSR and it was unnecessary to make any corrections or additions to the PSR. Coleman admitted the PSR was accurate. Coleman has never challenged or disputed the accuracy of his criminal history and the validity of his prior felony convictions set forth in the PSR. Since Coleman admitted the accuracy of his criminal history and the validity of his prior felony convictions in the PSR, there is no reason why the government should be required to prove it beyond a reasonable doubt under *Booker*.

In sum, this Court properly sentenced Coleman as a career offender under U.S.S.G. § 4B1.1 based on his admitted and undisputed record of prior felony convictions. This did not run afoul of *Booker*.

**V.**     <u>Conclusion</u>

Accordingly, the motion by federal prisoner Christopher Coleman for post-conviction relief pursuant to 28 U.S.C. § 2255 will be **DENIED and DISMISSED WITH PREJUDICE**. A separate judgment will enter.

SO ORDERED.

ENTER this the 18th day of May, 2009.


             */s/ R. Allan Edgar*
             R. ALLAN EDGAR
             UNITED STATES DISTRICT JUDGE